# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| DAVID R. CHRISTENSEN, | |
| Plaintiff, | No. C20-4031-LTS |
| vs. | |
| CITY OF SERGEANT BLUFF, et al., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

_____

This matter is before me on defendants' motion (Doc. 20) for summary judgment. Plaintiff David Christensen has filed a resistance (Doc. 28) and defendants have replied. (Docs. 29, 32). Oral argument is not necessary. *See* Local Rule 7(c).

## I. PROCEDURAL HISTORY

Christensen commenced this action on January 10, 2019, in the Iowa District Court for Woodbury County. Docs. 1, 3. He amended his state court petition on March 17, 2020, and again on June 3, 2020. Doc. 1. The named defendants are City of Sergeant Bluff, Iowa (the City), Aaron Lincoln, Dirk Jon Winkel, a/k/a Jon Winkel, and Mark Huntley. Doc. 3. Christensen asserts the following claims:

- Count I – violation of Iowa Code § 70A.29
- Count II – wrongful discharge
- Count III – civil conspiracy
- Count IV – aiding and abetting
- Count V – unlawful retaliation in violation of 42 U.S.C. § 1983 and plaintiff's rights under the First Amendment
- Count VI – procedural and substantive due process and freedom of speech under Iowa Constitution Article I, §§ 7, 9

Doc. 3 at 20-26. On June 3, 2020, defendants filed a notice of removal (Doc. 1) to this court on the basis of federal question jurisdiction under 28 U.S.C. § 1331. Trial is scheduled to begin June 1, 2021.

## II. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of

2

the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

### III. RELEVANT FACTS

The following facts[1] are undisputed for purposes of this motion unless otherwise noted:

The City hired Christensen as City Inspector/Code Enforcement Officer on December 27, 2012. His duties included: permit work, inspection of new construction

---

[1] The facts discussed herein are limited to those that are relevant to Count V for the reasons discussed in the analysis.

and rehabilitation, nuisance abatement, storm water erosion control and management, plan review, assisting with fire inspections and attending planning and zoning meetings as a staff representative. He was also in charge of various construction projects including: the Senior Center remodel, the Fire Department Tower remodel, constructing an office addition at the Public Works Building and installing bullet proof glass at City Hall. Pursuant to various 28E[2] agreements, Christensen provided building and property inspections, code enforcement and nuisance proceedings services to other communities within Woodbury County.

Christensen was eventually "spread too thin" due to his 28E duties or general contractor duties. By mid-June 2016, defendants state there were concerns about whether Christensen was adequately performing his job duties. Specifically, the parties dispute whether there was an issue regarding Christensen's lack of an electrical ICC certification. Defendants state this was a long-standing problem discussed with Christensen during a performance review with defendant Aaron Lincoln, City Administrator, in June 2016. They note such a certification was required by the state to assist with duties related to electrical inspections. Christensen states a certification was not required in June 2016 and that he performed electrical inspections for the City until October 2017 when the state fire marshal required that the regional state electrical inspector perform electrical inspections.

On April 27, 2017, Lincoln and the personnel committee reorganized the Building Inspector/Code Enforcement Department and put Christensen under the supervision of the Public Works Department and defendant Mark Huntley, Director of Public Works. Storm water enforcement duties were reassigned to Public Works and the City Clerk. Lincoln and the City Council created an order of priorities for Christensen. The parties

---

[2] Iowa Code § 28E.1 provides: "The purpose of this chapter is to permit state and local governments in Iowa to make efficient use of their powers by enabling them to provide joint services and facilities with other agencies and to cooperate in other ways of mutual advantage."

4

dispute the purpose of this directive. Defendants state it was made to lighten the load and help Christensen focus on duties that were important so he could be successful. Christensen states it was made because the building inspection position was funded 50 percent from the Public Works Department, Lincoln was busy with other tasks and Christensen's office was in the Public Works Department, which was a different location than Lincoln's office.

The City terminated Christensen's employment on April 2, 2018. The parties dispute the specific reasons for the termination but agree that it relates to Oak Hills. Oak Hills is in the north part of the City and was originally developed as air base housing. It is now a subdivision with 220 duplex units and some single-family units. The area was once a source of community pride but, after years of neglect, it had started to become blighted. Sometime prior to March 2014, when Lincoln was hired as City Administrator, the City began a series of discussions with Oak Hills owners about rehabilitation. Brian Redshaw was the City Administrator at this time. Defendants state that early in the negotiation process, the parties discussed updating the electrical service in each of the units at Oak Hills so that the City could provide underground service and eliminate certain transformers. They state this proposal required Oak Hills to adhere to the International Property Management Code in completing its portion of the electrical upgrade and contemplated that the City would waive inspection fees for the life of the project.[3]

The parties dispute when a copy of the proposed agreement was provided to Christensen. Defendants claim Redshaw provided Christensen with a copy of the proposed agreement sometime prior to March 2014. Christensen states he was provided a copy in approximately August 2016. The parties agree Christensen wrote

---

[3] Christensen argues this statement and the previous statement are not supported by the record. *See* Doc. 28-1 at 5. Defendants cite a document titled "Oak Hills Twelve Year Rehabilitation Plan" that contains the provisions cited by defendants. Doc. 20-2 at 56. The document also has handwritten notes. While it is not dated, it has a timeline that discusses projects beginning in 2013. Redshaw's name is on the document as the City Administrator. *Id.*

"ABSOLUTELY NOT" on the copy, but because they dispute which copy, they also dispute what this comment was referring to.

Defendants state Christensen wrote the notation on the portion of the proposal that requested a waiver of inspection fees. *See also* Doc. 20-2 at 56 (containing a handwritten comment - "Absolutely NOT!" – written in red ink at the bottom of the page next to a paragraph stating "the City of Sergeant Bluff will abate any proposed inspection fees during the tenure of this rehab project."). Christensen states it was written next to "Electrical work for the rehabilitation as described above will not require permits or additional fees."[4] Consequently, the parties dispute whether Christensen was objecting to a waiver of fees or a waiver of permits. Defendants state Christensen objected to the fee waiver and expressed concerns it could affect his future pay raises. Christensen states he objected to the permit waiver because it would violate Iowa law.

Christensen states he provided his copy with his notes and the "ABSOLUTELY NOT" comment to Lincoln and discussed his concerns with Lincoln, specifically informing him that not requiring permits for electrical work violated Iowa law. Defendants deny that Christensen discussed this with Lincoln, noting the only conversation Lincoln recalls concerned fees and Christensen's department losing revenue. Christensen states he also discussed his concerns with Huntley. Huntley denies this and recalls only that Christensen complained about waiving fees, because it would affect his department's revenues and consequently, his raise. Christensen does not know if he shared his concerns with the Mayor, defendant Jon Winkel.

---

[4] Christensen states he had a copy of this agreement with his handwriting in his desk at the Public Works Department and that this document has not been produced in discovery by defendants. Christensen notes the day after his employment was terminated, he returned to his office to return his cell phone's SIM card that had been requested by the City. When he arrived, Christensen saw Huntley and the City Clerk rummaging through the documents in his office. He believes the City found his copy of the Oak Hills Agreement and destroyed it. *See* Doc. 28-1 at 6. Defendants deny they destroyed any documents. Doc. 29 at 2. A copy of the ultimate agreement adopted in 2016, which contains the language cited by Christensen (but without any handwritten comments), has been provided by each party. *See* Docs. 20-2 at 58-59; 28-3 at 81-82.

6

After more than two years of negotiations, the parties signed the Oak Hills Rehabilitation Plan on August 11, 2016. With regard to upgrading electrical work, the agreement required the use of licensed, registered contractors. When work was completed, the owners were to notify the City's Code Enforcement Officer (Christensen) to inspect the work. The parties dispute whether adherence to the International Property Maintenance Code was required. Christensen notes that Iowa has its own electrical code and regulations. The agreement states: "Electrical work for the rehabilitation . . . will not require permits or additional fees." Docs. 20-2 at 58-59; 28-3 at 81-82. Christensen believes this is violation of Iowa law and states numerous electrical projects were performed illegally without a permit. Defendants state that the agreement worked as contemplated for more than a year. When a unit was upgraded, the contractor would call the City to deliver a meter. Electrical meters require a permit and inspection. Christensen or another Public Works employee would go to the property and confirm that the meter socket was appropriately wired. The City would then install the meter.

In October 2017, the state fire marshal called the City Clerk asking if Christensen had his electrical certification. The Clerk informed the marshal that Christensen was not certified and the marshal informed her that until he got his certification, the state would need to do electrical inspections. This did not cause any immediate problems because Oak Hills did not request any meters between October 2017 and March 2018.

On March 19, 2018, Kevin Lacey, a local contractor, called Christensen and asked for two electric meters for Oak Hills. Christensen called Lincoln to remind him that because he did not have his electrical certification, the state would have to do the inspections. Lincoln told Christensen to have Lacey call the state inspector. Christensen states he again informed Lincoln that the Oak Hills Agreement was in violation of Iowa law and that the City and the mayor could be liable. Defendants deny Christensen made such a statement. Christensen also informed the regional state electrical inspector, Mike Decker, of electrical code violations at Oak Hills and the City knew Christensen had spoken with him concerning these violations. This conversation did not explicitly involve

7

the Oak Hills agreement or permit waivers, but improper installation methods that the inspector had overlooked and that Christensen had noticed or been made aware of by others. *See* Doc. 28-3 at 32-36; Doc. 20-2 at 6-7.

In March 2018, defendants state that issues related to Christensen's performance were beginning to add up. Specifically, they contend that he had failed to notify Oak Hills that he could no longer do electrical inspections, he was not doing rental inspections and code issues were not being addressed.[5] Christensen argues the electrical code violations were occurring because electrical inspections were not required at Oak Hills per the agreement with the City. He maintains that he informed Lincoln in 2016, near the time the Oak Hills Agreement was signed, that it was a violation of Iowa law not to require permits and inspections for electrical work and again brought up the issue with Lincoln in 2018 when electrical violations at Oak Hills had become apparent. As noted above, Christensen's employment was terminated on April 2, 2018.

## IV. ANALYSIS

Because this case was removed to federal court based on Count V, alleging unlawful retaliation under the First Amendment pursuant to 42 U.S.C. § 1983, I will

---

[5] In another part of their statement of facts, defendants state the decision to terminate Christensen's employment was based on the "lack of oversight" at Oak Hills combined with Christensen's five-year failure to obtain his electrical certification. Doc. 20-1 at 4. The full quote from William Gaukel's deposition (cited by both parties) is:

> There were several reasons. The lack of oversight at Oak Hills was probably the straw that broke the camel's back, but there was a – again, a continued pattern of not taking direction, not following through, not continuing to move things forward as the City had requested that it became apparent to, I think, everybody involved that Dave wasn't going to get it done and it was time that we had to move on and find somebody that would come in and take care of it and follow through with the needs of the City.

Doc. 20-2 at 75.

8

Case 5:20-cv-04031-LTS-KEM    Document 33    Filed 02/24/21    Page 8 of 15

consider that claim first. If that claim cannot survive summary judgment, I will consider whether to exercise supplemental jurisdiction over the remaining state law claims.

A.      *Count V – First Amendment Retaliation in Violation of § 1983*

A prima facie case of First Amendment retaliation under 42 U.S.C. § 1983 requires a plaintiff to prove: "(1) he engaged in activity protected by the First Amendment; (2) the defendants took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse employment action." *Lyons v. Vaught*, 875 F.3d 1168, 1172 (8th Cir. 2017) (*Lyons II*) (quoting *Lyons v. Vaught*, 781 F.3d 958, 962-63 (8th Cir. 2015) (*Lyons I*)). Defendants seek summary judgment based on the first element, arguing that Christensen's alleged speech was not protected by the First Amendment.

The alleged speech at issue concerns (1) Christensen's statements to Lincoln in 2016 and 2018 that the Oak Hills agreement violated Iowa law by providing for electrical work without permits and (2) Christensen's statements to the regional state electrical inspector concerning electrical code violations at Oak Hills.[6] Defendants argue Christensen's speech was not protected because he was speaking as an employee of the City, not as a citizen expressing a matter of public concern. Doc. 23 at 19-21. Christensen disagrees, noting that he was not performing electrical inspections as of March 2018 because the state fire marshal required the regional state electrical inspector to perform the inspections during this time. He argues electrical inspections were not part of his official duties at that time and his responsibilities did not require him to report electrical code violations to the state inspector. Doc. 28 at 25-26. In reply, defendants note that an Oak Hills contractor contacted Christensen to request electric meters in 2018

---

[6] While defendants deny Christensen made these statements to Lincoln, they appear to accept Christensen's version as true for purposes of their summary judgment motion. *See* Doc. 23 at 20-21. I will do the same.

9

and Christensen provided him the information he needed, which was part of his job. Christensen then followed up with the regional state inspector to confirm the permits had been issued so that the City could deliver the meters that had been requested. As such, defendants argue Christensen's comments cannot be characterized as those of a private citizen. Doc. 32 at 7.

"A public employee's speech is protected under the First Amendment if he spoke as a citizen on a matter of public concern, but a public employee's speech is not protected if he spoke pursuant to his official duties." *Mogard v. City of Millbank*, 932 F.3d 1184, 1189 (8th Cir. 2019) (quoting *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018)); *see also Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for first Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). Speech is made pursuant to a public employee's duties "if it is 'part-and-parcel of' the employee's concerns about his ability to 'properly execute his duties.'" *Id.* As the *Garcetti* Court explained: "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti*, 547 U.S. at 421-22. "It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.*

In *Garcetti*, Richard Ceballos worked as a calendar deputy in the district attorney's office, which involved supervisory responsibilities over other lawyers. *Garcetti*, 547 U.S. at 413. A defense attorney contacted Ceballos regarding inaccuracies in an affidavit used to obtain a search warrant and asked Ceballos to review the case. *Id.* at 414. According to Ceballos, this was a typical request of someone in his position. *Id.* After an investigation, Ceballos concluded the affidavit contained serious misrepresentations

10

and presented this information to his supervisors. *Id*. After a meeting with the relevant parties, Ceballos' supervisors decided to proceed with prosecution. *Id*. Ceballos claimed he then suffered various retaliatory employment actions. He ultimately filed a claim pursuant to 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments for the alleged retaliatory actions. The Supreme Court reviewed whether Ceballos' speech was protected by the First Amendment. *Id*. at 413. It concluded it was not. The Court reasoned:

> Ceballos wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do. It is immaterial whether he experienced some personal gratification from writing the memo; his First Amendment rights do not depend on his job satisfaction. The significant point is that the memo was written pursuant to Ceballos' official duties. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

*Id*. at 421-22. Notably, it was undisputed that Ceballos had spoken pursuant to his official duties and the Court declined to "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id*. It stated, "[t]he proper inquiry is a practical one" and "[f]ormal job descriptions often bear little resemblance to the duties an employee is actually expected to perform." *Id*. at 424-25. It noted that other protections such as whistleblower laws and labor codes are available to employees who seek to expose wrongdoing. *Id*. at 425.

Here, the issue is whether Christensen spoke pursuant to his official duties when he made the statements at issue to Lincoln and the regional state electrical supervisor. With regard to the statements to Lincoln, it is undisputed that Christensen was asked to review the Oak Hills agreement by his supervisor. Whether that supervisor was Redshaw or Lincoln, and whether the agreement was a 2013 or a 2016 draft, are immaterial. Christensen provided written comments and states he discussed them with Lincoln. He

raised the same concerns to Lincoln in 2018 when Oak Hills contacted Christensen for electrical meters, which required an inspection by the regional state electrical inspector.

The fact that Christensen's listed job duties did not include reporting violations of the electrical code is not dispositive. *See id.* at 425 ("the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."). As City Inspector/Code Enforcement Officer, Christensen's responsibilities included enforcement of the electrical code, permit work and inspection of new construction and rehabilitation. *See* Doc. 20-2 at 23 ("This full-time position is responsible for the enforcement of ICC adopted Building, Electrical, Plumbing and Mechanical Codes, Zoning Ordinance and other related city codes."). Permit work was part of Christensen's duties and his statements about the legality of a waiver to a permit requirement concerned his ability to do his job. *See Winder v. Erse*, 566 F.3d 209, 215 (D.C. Cir. 2009) ("a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities, even if the report is made outside his chain of command"). Even if Christensen was not doing electrical inspections in 2018 when he made the statements, the undisputed record establishes that he was the contact person for meter requests (which require a permit and inspection), that he coordinated the necessary inspection with the regional state electrical inspector and that he followed up after the inspection had been performed if he noticed any issues.

Christensen's report of electrical violations to the regional state electrical inspector was also made pursuant to his position as the City Inspector/Code Enforcement Officer. *Compare McGee v. Public Water Supply, Dist. No. 2 of Jefferson County, Mo.*, 471 F.3d 918, 921 (8th Cir. 2006) (concluding district manager of public water supply district who expressed concerns over the district's compliance with environmental regulations made the statements as part of his official duties); *Batz v. City of Sebring*, 794 F. App'x 889, 898 (11th Cir. 2019) (concluding city fire chief spoke as an employee when he made complaints about various city officials undermining his efforts to enforce fire safety rules

at a historical building owned by persons with connections to the city council and administration); *Morris v. Philadelphia Housing Authority*, 487 F. App'x 37, 40 (3d Cir. 2012) (concluding an executive assistant's complaints up the chain of command about legality of housing authority's actions fell within his job duties); *Lyons II*, 875 F.3d at 1175 (noting that court's analysis in *Kincade v. City of Blue Springs*, 64 F.3d 389 (8th Cir. 1995) that city engineer's complaints about a dam's funding and safety issues that were made pursuant to an assignment from his employer and in his capacity as city engineer and that were deemed protected would not suffice under *Garcetti*).

Christensen does not allege that he complained to the regional state electrical inspector about the Oak Hills agreement, but about electrical code violations that were purportedly overlooked by the inspector. While Christensen alleges that the violations occurred because permits were not required at Oak Hills per the agreement, he does not allege that he discussed this with the regional state electrical inspector. *See* Doc. 28-3 at 6, 34-36; Doc. 20-2 at 176-78. Even if he had discussed the Oak Hills agreement with the regional state electrical inspector, this discussion would have pertained to his job duties as City Inspector/Code Enforcement Officer. From Christensen's perspective, the electrical violations were not on his radar because of a permit waiver, but because of his job duties as City Inspector/Code Enforcement Officer.

All of the statements at issue were made pursuant to Christensen's official duties. As such, defendants are entitled to summary judgment on Count V.

### B. *Supplemental Jurisdiction Over State Law Claims*

Christensen's remaining claims arise under Iowa law:

- Count I – Violation of Iowa Code § 70A.29

- Count II – Wrongful Discharge Under Iowa Common Law

- Count III – Civil Conspiracy Under Iowa Common Law

- Count IV – Aiding and Abetting Under Iowa Common Law

- Count VI – Procedural and Substantive Due Process and Freedom of Speech Violations Under Article I, Sections 7 and 9 of the Iowa Constitution

Doc. 28-3. A federal court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.

"In the 'usual case' where all federal claims are dismissed on a motion for summary judgment, 'the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Starkey v. Amber Enterprises, Inc.*, No. 19-3688, --- F.3d ---, 2021 WL 377800, at *3 (8th Cir. Feb. 4, 2021) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009); *Kapaun v. Dziedzic*, 674 F.2d 737, 739 (8th Cir. 1982). Having considered the relevant factors, I decline to exercise supplemental jurisdiction over the remaining claims, which depend solely on state law. *See Farris v. Exotic Rubber & Plastics of Minn., Inc.*, 165 F. Supp. 2d 916, 919) (D. Minn. 2001) ("Where, as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction.").

Notably, defendants have raised an issue that is dispositive to Counts II through IV regarding whether the Iowa Supreme Court's decision in *Ferguson v. Exide Technologies, Inc.*, 936 N.W.2d 429 (Iowa 2019) should be applied retroactively. That issue should be resolved by Iowa courts, as should claims involving interpretations of the Iowa Constitution and an Iowa statute. While trial is approaching, cases have been remanded much closer to a scheduled trial date. *See, e.g., Willman v. Heartland Hosp. East*, 34 F.3d 605, 613 (8th Cir. 1994) (affirming court's decision not to exercise jurisdiction over remaining state-law claims less than two weeks before trial). For these reasons, I will remand this case to the Iowa District Court for Woodbury County.

## V. CONCLUSION

For the reasons set forth herein, defendants' motion (Doc. 20) for summary judgment is **granted** as to Count V, which is hereby **dismissed**. Because the remaining claims arise under Iowa law, and I find that it would not be appropriate to exercise supplemental federal jurisdiction over those claims, this case is hereby **remanded** to the Iowa District Court for Woodbury County.

**IT IS SO ORDERED.**
**DATED** this 24th day of February, 2021.

_____
Leonard T. Strand, Chief Judge